Madam Clerk, please call the next case, or the first case. Ms. Hartman, you may proceed. Thank you. Good morning, Your Honors. My name is Emily Hartman. I'm from the Office of the State of Health Defender, and I represent the appellant, Randy Caldwell. Could you speak up just a bit, please? I will, yes. Thank you. During this argument, I'd like to focus on Issues 1 and 2 from Mr. Caldwell's opening brief, but I would be happy to answer any questions the Court has about the other issues. This resisting arrest case was a credibility contest between the State and defense witnesses. Issue 1 is that the State improperly introduced evidence through a hearsay statement that Caldwell was beating his girlfriend, Olivia Blanchett, on the morning in question. Issue 2 is that the State improperly bolstered the credibility of its police witnesses by telling the jury that the police would have risked their careers by falsely implicating Caldwell. The only evidence in this case came from the two sets of witnesses. The State witnesses related that they were all police officers, and after they were called to Caldwell and Blanchett's apartment, Caldwell refused to let them speak to Blanchett and resisted their subsequent attempts to arrest him. On the other hand, the defense witnesses related that Caldwell did allow the police to speak to Blanchett, but that the police overreacted after he chuckled at them because they asked Blanchett the same questions about her welfare over and over again. During the State's case, Sergeant Ken Dragon related the substance of the 911 call that led the police to Caldwell's apartment that day. Specifically, he told the jury that the dispatcher had told him that the 911 caller had said she heard screaming and thought that Caldwell was beating Blanchett. Not only is this improper double hearsay, but this is an incredibly damaging piece of evidence for the jury to hear. Domestic violence is a sensitive, emotional issue. Because this was introduced through hearsay, the defense had no opportunity to cross-examine either the caller or the dispatcher to determine the basis for their knowledge. If this had happened, this might have revealed that Ken Dragon had actually inaccurately relayed the contents of the call. Was the purpose of the evidence to prove that the defendant was beating his girlfriend? With no instruction and a jury trial, the jury, I mean, with no instruction to tell them otherwise, the jury would have used this as substance of evidence. So, the purpose of this evidence introduced, I mean, he's on trial for resisting arrest, but he's basically given the motive for this crime by the State's witness here. In a perfect trial, when would that, which you're saying there was no curative instruction either from the bench at that time or when the jury was instructed, am I correct? Correct. No curative instruction at all. Okay. Was there one requested? No, there was not one requested. Would you still be arguing this issue of sua sponte at that time the testimony was given, the trial judge instructed the jury as to the nature of the charge that the defendant is facing? I think given the nature of this evidence, just how highly prejudicial domestic violence evidence is, I would be arguing the same thing. This is not something that can be cured by an instruction. You would say you can't unring the bell. You can't unring the bell, but, of course, it's worse without an instruction. The error is more egregious with no instruction at all given to the jury. And I think given that the jury is not instructed on this issue, the jury would have used this as substantive evidence. This is especially evident from the fact that the judge in this case herself used it as substantive evidence. She made numerous comments on the record indicating her belief that Caldwell was a domestic batterer. And based – this is the only evidence mentioning domestic battery, but based on this one statement, she sentenced him to domestic violence reporting probation, which was not raised on appeal because of this move. Well, didn't this whole incident between your client and the police arise out of the fact that the police said they wanted to talk to the – see and talk to the girlfriend to make sure she was indeed okay? That was the police officer's testimony, correct. And because they got a – well, why would they want to talk to her? It was because they got a domestic violence call and to make sure that the husband doesn't come out with a boyfriend and say, oh, everything's fine, she's all right, you can leave. When, in fact, you've got a victim inside who may be hurt. So this is how the whole thing started. So what did that testimony do other than explain why the police were there and why the police were demanding to talk to Blanchette and see that she was okay? The testimony – first, it's not necessary to say that he's beating her to get into why the police needed to talk to her. Any kind of – it sounds like the policy of the policeman was any kind of domestic call is to talk to everybody in the house. The jury could have been told just police policy, any sort of domestic call, without using the word violence because a domestic call could be screaming or anything like that. Just the word call, you know, we responded to a call, we needed to talk to everybody, is enough to tell the jury why they were there. Without getting into the actual substance of the call, that went above and beyond what was needed to tell – to explain, and it brought out highly prejudicial information. Do you really believe that any juror doesn't understand what a domestic call is, that it's benign? Do you think they – I mean, I know the Supreme Court has spoken that that's okay to disclose the purpose of the presence of a policeman at the incident site. But, I mean, in realistic terms, is there anybody around who doesn't have meaning for a domestic call, know what that means?  No, it would have been a lot better. I said that they responded to a call and they needed to see everybody. So you would prefer the police officer be limited to only saying, I responded – we were responding to a call, but not describe the nature of the call in any way. If it was suitable to our policy, we needed to check if everybody was okay. That should be sufficient because this trial is, after all, resisting arrest. It's not about what happened inside the apartment. So for the purpose of resisting arrest, the police only needed to get into the – they were engaged in an authorized act, which was checking on the residents of the apartment. The impact of this evidence on the defense case was fourfold. First, a jury is more likely to find Caldwell guilty of this offense if he committed domestic battery. He's a domestic batterer and he's more likely guilty of another offense as well. He also might be seen as less credible if he's a domestic batterer. And not that it proves an element of the offense, but evidence that he committed domestic battery right before the police arrived provides a motive for him to resist arrest, which is the crime he was on trial for. And lastly, this also would have impacted Blanchett's credibility because if Caldwell is a batterer, she might lie to protect him or out of fear, something the jury might think. After telling the jury that Caldwell was a domestic batterer, the state finished off its case by telling the jury to believe the police witnesses because they would not risk their careers by falsely implicating Caldwell. Under Illinois Supreme Court precedent, this is clearly error. There is no evidence that the police risk anything by falsely implicating Caldwell or would have risked anything. This argument improperly bolstered the testimony of the police witnesses and in turn, this magnified the earlier error because the combination of these two errors had the effect of pushing Caldwell and Blanchett's credibility down while at the same time pushing the police witnesses' credibility up. There was nothing else in this case about witness credibility. There's no physical evidence and there's no impeachment. Well, the charge is resisting arrest, right? Correct. And wasn't there evidence that there was indeed a scuffle, in fact police officers tased this guy twice? Correct. That leaves two options, doesn't it? He was resisting arrest where the police pulled up while this fellow was minding his business, jumped out of the car, assaulted him and lit him up a couple times with a taser for no reason. That's not entirely correct, Your Honor. Respectfully, the testimony was that he did answer their questions and that he admitted maybe behaving like a smart aleck, chuckling at them when they seemed overly concerned. So the other story from the defense side is that the police overreacted to his smart aleck behavior, grabbed him, threw him to the ground, and then arrested him. So he didn't resist arrest, but the police, out of anger, maybe overreacted. These errors were not objected to. However, this court should reverse under plain error, under the closely balanced prong. The evidence here is closely balanced because this was a credibility contest, and because here both of these errors directly impacted the credibility of the witnesses and the jury's assessment of each side's case. In regard to the closely balanced test and the Adams case from the Supreme Court, the Supreme Court agreed the argument was improper, but they have a paragraph, don't they, in there that says, although it can be arguably said that, you know, I'm paraphrasing, that it was closely balanced, really it wasn't that. And it's a very similar situation to this, isn't it? The facts in Adams are, no, with all due respect, Your Honor, in Adams, the defendant was charged with possession of narcotics, and they found narcotics on his person. But I'm talking about the testimony was officers versus... Oh, the testimony was the same, correct. But the closely balanced nature of the facts was vastly different in Adams. Adams is not closely balanced because in a possession case they found drugs on him. I had a question about whether the officers were telling the truth about Adams dropping something, wasn't it? Weren't those the facts? I recall they found it on his person, but it's just the best of my recollection. And in addition, the defendant's story in Adams was a highly improbable series of coincidences. I don't think the Supreme Court in Adams meant that this kind of error can never be closely balanced, but just on the facts of Adams, particularly with the narcotics being found, that it was closely balanced. It wasn't closely balanced there. This situation is more like Naylor. People v. Naylor, 2008, this Illinois Supreme Court case. In Naylor, the court found evidence like this to be closely balanced where there was two police officer witnesses against one defense witness. But this case is closer than Naylor because in Naylor, the only defense witness, he gave sort of a vague story and didn't really provide an explanation, where here you have two defense witnesses who corroborated each other's testimonies and who provided a detailed narrative of the entire encounter. Under Naylor's reasoning, this is closely balanced. I'd like to reserve the rest of my time for rebuttal. The two defense witnesses being? Blanchett and Caldwell. Okay. Yeah, the defendant and? And his fiancée. And the alleged victim. I'm sorry? And the alleged victim and the domestic battery. There's no evidence of any domestic battery. I understand. And we're trying a different kind of case here. Right. Domestic violence. So you're saying that if the trial judge said, instructed the jury, informed the jury, the defendant never has been charged with nor has he ever been convicted of domestic violence, you're saying that's insufficient? This case is stronger than that case. I think I do agree that you can't unring the bell when the evidence is prejudicial. It depends on what instruction was given, how serious the error was. But that isn't this case. This case there was no instruction at all. So there really wasn't any way to evaluate what kind of effect, what kind of response the jury would have had to the instruction that was given because we don't know what the judge would have said if she did give an instruction. So that's interesting. There is no way to evaluate it, yet plain error suggests that we have to. Without any instruction, it's safe to presume that the jury used it as substantive evidence. Earlier I was saying that there's no way to evaluate what instruction would have been given if the judge gave a terse instruction or a more detailed instruction that might affect the strength of the issue. But in this case, there was no instruction. The judge used it as substantive evidence. The jury certainly would have used it as substantive evidence given how prejudicial and damaging the evidence was. I have one last question with regard to the doctrine of the two prongs for plain error. Yes. And when you cite the Naylor case and you cite the Heron and those cases, which talk about the two prongs and say in the first prong, if the case is closely balanced, the court wasn't going to reassess or make judgment calls. They're going to find it to be plain error if there was error. But haven't they sort of walked away from that in the Adams case? They never said it directly. But in Adams and White, where the Supreme Court, even though there was competing evidence by witnesses, which typically used to be called closely balanced, they said really it wasn't, like for example in Adams, they said it really wasn't in this case. And you say, well, that's because it was a drug case and so forth. But it was two officers versus an offendant. But there was physical evidence. So the physical evidence corroborated the officer's story, which makes that case different than this case. The Supreme Court isn't saying, maybe in some cases they find that the evidence isn't closely balanced, but that doesn't mean the prong is gone. In this case, you don't have physical evidence to corroborate the officer's. You don't have impeachment or you just have three officers who are from the same police department telling one story, a couple telling another story. This is textbook closely balanced. I will reserve the rest of my time for rebuttal. You'll have time on reply. Sorry? You'll have time on reply. Thank you. Mr. Leonard, you may respond. Thank you. May it please the court, counsel, I believe the defendant relies a lot on speculation and what the jury could have heard and what the jury could have thought. But I'd like to get to the first question, was this forfeited because it was not preserved in the trial court? The two prongs of the plain air test do not come into play until you first decide whether there is a clear and obvious error. And in the first issue, we don't have a clear and obvious error. There's an exception to the hearsay rule. A police officer can testify to the investigative steps he took. It's not asserted for the truth of the matter. And that was the case here. The three officers testified to why they were called to this address. One officer described it as a physical domestic call, another one a domestic dispute, another said, I think, domestic disturbance. I think it was Sergeant Kendrigan who testified that he was told from the dispatcher that the 911 caller said it sounded like he was beating her. He didn't use the person who called, did not use anybody's name. Let me ask you, in this case, the defendant was not charged with domestic violence, right? Correct. So it's not really even, we don't get to exceptions to the hearsay rule because hearsay is not a court statement to prove the truth of the statement, correct? Correct. Well, they're not trying to prove, there's no proof that the defendant struck his girlfriend. The statement's just offered that somebody said it. This is what somebody told the police, that's why we were there. So if they're not offering it for the truth of the statement, we don't get to exceptions to the hearsay rule because it's not hearsay to begin with, correct? Correct, I believe you're right. If he were charged with domestic violence, in this case then, we would have to talk about an exception to the hearsay rule because they'd be offering that to prove that he was guilty of domestic violence. But in this case, he's charged with resisting arrest. Right. And beating his girlfriend is not an element of resisting arrest. No. So nobody's got to prove that. No. It's right here. I'm sure the jury did not simply assume that just because the police officers were called to this apartment that it was a domestic violence case. And in the prosecutor's closing argument, she specifically said that this is not about domestic battery and nobody argued that the defendant was guilty of domestic violence. This is clearly whether the defendant resisted a peace officer. The defendant talks about the evidence is closely balanced. I disagree. Three police officers testified to one version, and the defendant's and his girlfriend's versions are totally different. So one is correct and one is not. They can't both be correct. They were so diametrically opposed. The jury must have found that the police officer's testimony was credible because they found him guilty of resisting arrest. And that used to be the classic closely balanced? You've got three saying one thing, two saying another, one to one saying different things. That is, but I did cite a rule or a case. I believe it was a Supreme Court case. In my brief, I don't remember offhand, that just because the defendant tells a different story doesn't make it closely balanced. That's Adams, isn't it? I think so. And the defendant here, I'm sure the jury must have found his version not credible and the police officer's credible because they convicted him. Now with regard to the second issue, of course that was forfeited also. The prosecutor did make a mistake. She should not have argued that the officers would not risk their jobs and careers, their reputations, just because this man chuckled at them. But we have to decide, was that plain here? Already I've alluded to the fact that this was not a closely balanced case. So the first prong of the plain air test. Now the question is, let's get this all straight. Okay. Is it plain air? The question is, is it reversible air? Are you saying it's not plain air? I'm saying it is not plain air. Okay, so no one looking at that would find that air, looking at the record, right? Could you repeat that? I'm always troubled by the fact that the question is always, is it reversible air? You're saying it wasn't air in the first place? No, the first issue, I'm saying that was not air in the first place. The first issue, but now you've moved to the second issue. Now the second issue, I'm saying that that was air for the prosecutor to make that argument. So it was plain air. It's a question of whether it's reversible air. No. Really? It was air, but it was not plain air. No, well, I don't have to write an article on it, but it's plain because it's obviously air. You just said it was air. That's why it's air. It's plain. The question is, is whether it's reversible. And the two prongs are to determine whether it's reversible. Well, in the Adams case, they found that the similar language was air, but they found that it was not plain air because the evidence was not closely balanced. And just because the prosecutor made this statement, it did not rise to a fundamental unfairness. So it didn't meet the second prong either that the air was so serious that it affected the defendant's trial. So they refused to address the air and said that it was not plain air. So I would follow the Adams case, which is directly on point, page 15 and 16 of my brief. I put out the argument, what they made at Adams, and the argument that they made in this case. And it's almost exactly the same, but the Adams case was more egregious because it was repeated three times. In this case, it was stated once in passing by the prosecutor. So with regard to Justice Holdridge, your question. If it was plain air, then we have to decide whether it was reversible air. And here, it's certainly not reversible air. The test here is whether the remark was a material factor in the conviction, or whether the jury might have reached a different verdict had the prosecutor not made the remark. I argue in my brief that the evidence was not closely balanced. The defendant's testimony is not credible. We have three police officers testifying consistently. The defendant's argument is bordering on ridiculous that these police officers grabbed him just because he had chuckled at him and threw him to the ground, handcuffed him, and then after he was handcuffed, tasered him. Our Supreme Court has instructed us that it's not a math test about how many witnesses on one side or the other. Yeah, it's not a math test. It's because you've got more witnesses on one side than the other doesn't make it more closely balanced or less closely balanced. No, it's not a math contest. You have more witnesses. I have more witnesses. But clearly, the jury must have found the defendant's testimony not credible since they convicted the defendant of the crime. If you don't have any other questions, I'd ask that you affirm the defendant's conviction. I don't believe there are. Thank you. Counsel, you may reply. It's possible from the errors in this case that the jury didn't find the defense testimony credible because they thought Caldwell was a domestic batterer and because they thought the police certainly wouldn't lie because they would be risking their careers if they did so. The jury's assessment of Caldwell and Blanchett's credibility was impacted by the errors in this case. So counsel's argument that the jury, you know, we have to just defer to their credibility determination doesn't hold water where we're dealing with errors that specifically impact credibility. Your first issue, you spend a lot of time talking about hearsay and double hearsay and really isn't the issue legal relevance as opposed to, clearly the law today is relevant to explain why the police are where they're at and your argument, and again, beating up your girlfriend is not an element of resisting arrest. So isn't the argument that the prejudicial effect of this evidence outweighs its probative value as opposed to this hearsay argument because it's just not hearsay? I respectfully disagree that it's not hearsay, but of course the argument is also that it is extremely prejudicial and its prejudicial impact outweighs its probative value. It is hearsay because the jury, it is admittance for its truth because the jury was never told not to consider it for its truth. So in this case, without an instruction, you have to assume that it was taken for its truth. But of course, you know, the prejudicial value of the evidence is really the most important thing. If it was hearsay that was minor, we wouldn't be objecting. It's evidence that told the jury that Caldwell had just engaged in a very serious, horrific crime before. Well, or was it just evidence that somebody told the police he had done that? And not that he did it, but that somebody told the police that he did it. If that's the case, it's not hearsay, right? If you're not trying to prove, what benefit, what element of anything the state is trying to prove involved your client hitting his girlfriend? It's not an element of the offense, but sometimes the state is entitled to prove motive, and it does go to his motive for resisting arrest. So while not an element, it is certainly relevant to his conviction. Well, in that case, the evidence isn't offered for the truth of the statement. And if it's not offered for the truth of the statement, then by definition, it's not hearsay. The evidence, even the fact that it was the police officer saying that the dispatcher said that the caller said that still tells the jury there's a strong implication that he did it. I mean, the caller's calling 911 based on something. It's giving the jury information that he's committed this other offense. Well, and again, so that goes to what I'm saying. Then it's a legal relevance argument, not a hearsay argument, in other words. Even under a legal relevance argument, this evidence is far more prejudicial than its probative value. It doesn't offer anything. As argued earlier, the police only needed to explain that they were called to the apartment and had a policy to talk to everyone. Going into the substance of the 911 call, certainly not necessary to explain that, so it has no relevance, and its prejudicial value is very high. So even under, I mean, obviously you disagree. I argued earlier that it is hearsay, but even under prejudicial versus probative argument, this is very prejudicial. But I understand your argument is you're saying it's an exception to the hearsay rule for a limited purpose. Limited purpose is to describe why the officer did what they did. I say it doesn't fall into that exception, though. That exception is- I mean, that's the exception we're talking about. Yes, that is the exception, but this doesn't fall into that exception because there's no need to go into the substance of the call, and it went beyond what the officers needed to do to explain. Well, the theory behind that exception is that otherwise people would wonder why the officers showed up at that residence or why they did what they did. Isn't that the- Right, and they had a policy to, you know, pursue to a call to a residence to check on everyone.  The crime is resisting arrest, so they don't really need to go any further than that, certainly not into the actual substance of the 911 call. They weren't going there to charge somebody with resisting arrest, though. We don't know what they were planning on charging them with. I mean, this is-this should not-this isn't something that we, you know, had any proper information on. Is there-from your perspective, is there any purpose other than-I guess what I'm saying is, like, okay, domestic. Domestic call. We were called there because there was a report of sexual abuse. I mean, you can list all sorts of alleged criminal activity, and you're saying there shouldn't be anything at all descriptive about the purpose of appearing there. Not about-not getting into other crimes or any kind of extra bad acts that might have been committed, because if he's not charged with that, then that's not relevant to the crime. It's not needed to explain. Well, I understand that. So what you're saying is all they should be allowed to testify to is pursuant to a call, we appeared. You could say a call to a residence and not a policy. Well, yeah. And our policy was that's enough to explain it. Yeah, our policy is to check on everyone. There is no case law supporting that position, though, with regard to this exception. I'm relying on people who juror in my opening brief, which discuss the need to go into the contents of the call versus to just say a call. So there is case law supporting that position. Juror discusses when the police witnesses or the state goes beyond anything that is needed, the extra information about the substance of the call is prejudicial. What I was referring to is the extreme limitation you're asking for in this case. You're saying that we as the court should further elaborate on that exception by stating the only thing they can say is they showed up because they received a call regarding that residence. No, my apologies, Your Honor. Just saying that here it was error. This court doesn't need to go into anything further, and it's sort of a limit on the exception. That's a question for another case. This case, the substance of the call and the extent of the prejudicial information was error. I was not asking this court to- So you and William want us to engage in any dicta, right? There's no need to engage in dicta. This error was reversible. This error was extremely prejudicial. I'm not asking this court for dicta, just for reversal on these errors. With regard to counsel's comment that the argument relies on speculation about the impact of this on the jury, just to remind the court again that the judge, somebody who's legally trained not to consider hearsay for its truth, she considered this statement for its truth. It impacted her for the rest of the case. It affected her sentencing decision. Okay, okay. If there are no further questions? I don't believe there are. Thank you. For the reasons argued today, cumulative impact of these errors and all the errors in Mr. Caldwell's opening brief Mr. Caldwell respectfully requests that this court reverse his conviction and remand his case for a new trial. Thank you. Thank you, counsel, both for your arguments in this matter this morning. It will be taken under advisement that this position shall issue. We'll stand in brief recess for panel change.